UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL MAY SHUGARS,

       Plaintiff,

v.                                          Case No. 1:15-CV-617

COMMISSIONER OF SOCIAL                      Hon. Ray Kent
SECURITY,

       Defendant.

                                  /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff completed the 12th grade and had previous employment as a factory worker, telemarketer, housekeeper, and home health care worker. PageID.218. She alleged a disability onset date of January 1, 2009. PageID.202. Plaintiff identified her disabling conditions as depression, anxiety, carpal tunnel syndrome, high blood pressure, lower spine problems and back pain. PageID.217. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on January 10, 2014. PageID.46-55. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of October 14, 2011. PageID.48.  At the second step, the ALJ found that plaintiff had severe impairments of bipolar disorder, depression, anxiety, degenerative disc disease and obesity. *Id.*  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*  The ALJ specifically considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (affective disorders), 12.06 (anxiety related disorders) and 12.09 (substance addiction disorders).  PageID.48-49.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally climb ramps or stairs, never climb ladders, ropes and scaffolds, frequently kneel, crouch, crawl and stoop and frequently perform overhead reaching with the right upper extremity.  The claimant is also limited to frequent exposure to vibrations.  She should only perform simple, routine, repetitive tasks that are essentially isolated with occasional supervision.  Finally, the claimant is limited to low stress work, which is defined as no strict production paced work or quotas, occasional changes to work setting, occasional use of judgment and occasional decision making.

PageID.49.  The ALJ also found that plaintiff had no past relevant work.  PageID.53.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light exertional jobs in the national economy.  PageID.54-55.  Specifically, the ALJ found that plaintiff could perform the following unskilled, light work in Michigan:

4

housekeeping/cleaner (excluding hotels, motels and private homes) (11,000 jobs); and stocker (not in front end of store) (15,000 jobs). PageID.54. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since October 14, 2011, the date the application for SSI was filed. PageID.55.

### III. ANALYSIS

Plaintiff raised two issues (with sub-issues) on appeal. The claimed errors are limited to plaintiff's mental ability to perform work related activities.

> **A.  The ALJ failed to comply with 20 C.F.R. § 416.927 by failing to give proper weight to the opinions of Plaintiff's treating physician.**
>
> > **1.  The opinion of the Plaintiff's treating psychiatrist was entitled to controlling weight.**
> >
> > **2.  Had the ALJ given Dr. Ailabouni's opinions proper weight, the Plaintiff would have [met] Listings 12.04 and/or 12.06, even if for a closed period.**
> >
> > **3.  The ALJ failed to address the factors required by 20 C.F.R. 416.927(c) when she did not give great or controlling weight to the opinion of Plaintiff's treating physician; because that is not a harmless error, Plaintiff is entitled to a remand.**

Plaintiff contends that the ALJ failed to give controlling weight to the opinion of her treating psychiatrist, Julia Ailabouni, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the

assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Ailabouni filled out a written Mental RFC assessment dated November 7, 2013 (Exhibit 13F) as well as a transcribed statement dated November 11, 2013 (Exhibit 14F). *See* PageID.572-577.  The ALJ addressed Dr. Ailabouni's opinions as follows:

> In a medical source statement dated November 7, 2013, Julia Ailabouni, M.D. opined that the claimant was unable to meet competitive standards when it came to

> maintaining attention for two-hour segments, maintaining regular attendance, completing a normal workday/workweek without interruptions from psychologically based symptoms and understanding, remembering and carrying out detailed instructions (13F). Dr. Ailabouni further opined that the claimant was unable to respond to changes appropriately and could not deal with normal work stress. She indicated that the claimant would be absent from work 3-4 days a month and was unable to interact appropriately with the public or adhere to basic standards of neatness. Dr. Ailabouni noted marked limitations in activities of daily living and social functioning and extreme limitations in concentration, persistence and pace. In a signed statement, Dr. Ailabouni indicated that the claimant's medication regimen was effective and that over the past few months the claimant had improved and changed (14F). She stated that the claimant could perform a fulltime job with simple tasks, but that prior to August 2013 the claimant was not capable of working full time because of her mental health.
>
> \* \* \*
>
> I also accord little weight to Dr. Ailabouni's medical source statement because it is inconsistent with the record and it consists of contradictions within itself. In her signed statement, Dr. Ailabouni reported that the claimant's treatment was effective, her condition improved and she was currently capable of working. However, she also suggests that the claimant presented marked and extreme, she would be absent from work 3-4 times a month, she was unable to meet competitive standards when it came to maintaining attention for two-hour segments and could not maintain regular attendance. Such limitations do not correspond with improvement nor do they show that the claimant is currently capable of performing simple tasks.
>
> I note that the GAF ratings range between 45 and 60, but the records also show that the claimant was not always compliant with her medication and failed to pursue therapy. In fact, Dr. Ailabouni conceded that the claimant's medication was working and her condition had improved. . . The record shows that the claimant reported looking for work, which suggests that she was willing and capable of working if hired.

PageID.52-53.

In her transcribed statement, Dr. Ailabouni stated that she had been seeing plaintiff since early 2011 and treating her for bipolar disorder. PageID.576. The doctor explained that the November 7, 2013 Mental RFC Form related to plaintiff's condition as it existed from approximately November 2011 (i.e., "about the previous two years") through about August 2013. PageID.576-577.

According to the doctor, "[w]hen I first saw her, plaintiff was severely dysfunctional" but that from about August 2013 forward, plaintiff could "work at a fulltime job . . . with simple tasks." PageID.577. Dr. Ailabouni's opinions are not inconsistent, but appear to reflect a successful course of treatment from November 2011 through August 2013. Based on this record, the ALJ did not give good reasons for rejecting the doctor's opinion with respect to plaintiff's condition as it existed during the closed period of November 2011 through August 2013. *See Wilson*, 378 F.3d at 545; 20 C.F.R. § 416.927(c)(2). Accordingly, this matter will be reversed and remanded pursuant to sentence four, 42 U.S.C. § 405(g). On remand, the Commissioner should (1) re-evaluate Dr. Ailabouni's opinion with respect to plaintiff's condition as it existed from November 2011 through August 2013, and (2) determine whether plaintiff would meet the criteria for Listing 12.04 or 12.06 during that closed period.

> **B.     The ALJ's Decision on Plaintiff's Residual Functional Capacity (RFC) is not supported by substantial evidence.**
>
> > **1.     The RFC determination failed to properly consider Dr. Ailabouni's treatment records and all Plaintiff's well-documented impairments required by 20 C.F.R. § 416.920a, SSR 98-6p and SSR 85-15.**
> >
> > **2.     The ALJ failed to properly address Plaintiff's credibility.**

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual

8

retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  Plaintiff has raised two issues.

First, plaintiff contends that the ALJ failed to properly consider Dr. Ailabouni's treatment records.  The Court agrees with this contention for the reasons discussed in § III.A., *supra*.

Second, plaintiff contends that the ALJ failed to properly evaluate her credibility.  An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 531.  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence.  *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, the ALJ did not provide an independent discussion of plaintiff's credibility other than to state that "the claimant's statements concerning the intensity, persistence and limiting

9

effects of these symptoms are not entirely credible for the reasons explained in this decision. PageID.50. However, the decision provided little explanation other than to point out that "the claimant was not always compliant with her medications" and that "the claimant reported looking for work." PageID.53. Plaintiff's failure to comply with her medications was due, in part, to her inability to afford medication and "to access the health system." PageID.405-408, 415. This should be explored on remand. Finally, the latter statement is not inconsistent with the record. The ALJ noted that at the hearing, "[p]er the claimant, she last looked for work in October and December 2011." PageID.50. This would be consistent with plaintiff being unable to work during a closed period of time from about November 2011 through August 2013. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985). Accordingly, on remand, the ALJ should also re-evaluate plaintiff's mental RFC and credibility as it existed from November 2011 through August 2013.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to (1) re-evaluate Dr. Ailabouni's opinion with respect to plaintiff's condition as it existed from November 2011 through August 2013; (2) determine whether plaintiff would meet the criteria for Listing 12.04

or 12.06 during that time frame; and, (3) re-evaluate plaintiff's mental RFC and credibility during that time frame.  A judgment consistent with this opinion will be issued forthwith.


Dated:  September 12, 2016              /s/ Ray Kent                                   
                                        RAY KENT
                                        United States Magistrate Judge